Summers, J.
The first question to be determined is, whether the interpretation of the contract is governed^by the laws of Ohio, or of Indiana; for, if by the latter, the demurrer admits that by the law of Indiana, the plaintiff is bound by the valuation by him placed upon the horse and upon which the freight was based,
The rule established by the Supreme Court of the United States is, 'chat
“The law of the place where a contract is made governs its nature, obligation and interpretation, unless it appears that the parties; when entering into the contract, intended to be bound by the law of some other country.”
Liverpool & Great Western Steam Co. v. Phoenix Insurance Company, 129 U. S., 397.
In England the rule is the same. See In re Missouri Steamship Co., 42 Ch. Div., 321; Hutchinson on Carriers, (2nd Ed.), sec. 144a.
“Matters bearing upon the execution, interpretation, and validity of a contract, are determined by the law of the place where it is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy depend upon the law of the place where the suit is brought.”
Scudder v. Union National Bank, 91. U. S., 406. In the opinion, Mr. Justice Hunt gives illustrations of matters connected with performance, and it is evident that the question here does not relate to such matters.
*128 In this state, however, the matter seems to be controlled by the place of performance, and a different rule- is established, by which,of course, we are bound.
In Railway Co. v. Sheppard, 56 Ohio St., 45, it is decided, that.
“A contract made in one state or country to be performed in another, is governed by the latter, which determines its validity, obligation and effect,” and that “where a railroad company receives live stock in another state, under a contract there made to transport it to a designated place in this state, and while the stock is being carried in this state, it is injured by the company’s negligence, the rights of the parties, in an action for damages for the loss, are governed by the laws of this state, and not by those of the state where the contract was made.”
See'also, Jacobson v. Adams Express Co., 1 O. C. C., 381.
But counsel for plaintiff in error, claim that the case is not in point, because it is limited to cases in which the accident happens in the state, and that the case decides that the rights of the parties are to be determined by the laws of the state of Indiana, in which the accident happened. This claim may be warranted by what appears in the opinion, if not by the quotations we have made from the syllabus. On page 46, the judge delivering the opinion, says:
“We understand the rule to be, that where a contract is made in one state to be performed in part in another, and an action is brought for a breach of that part of the contract, the rights of the parties must be determined according to the law of the latter state. Story on Contracts, sec. 655; Barton v Wheeler, 49 N. H., 9. ”
The decision in the case above referred to, in the United States Supreme Court, is to the contrary. Mr. Justice Gray, delivering the opinion, says: (129 U. S., 397, 461), (having determined that the contract was an American and not an English contract):
*129 “This being so, the fact that the place where the vessel went ashore, in consequence of the negligence of the master and officers in the prosecution of the voyage, was upon the coast of Great Britain, is quite immaterial.”
And on page 458, he says:
“The suggestion in Barton v. Wheeler, 49 N. H., 9, 29, that the question, whether the liability of a railroad corporation for goods transported through parts of two states, was that of a common carrier or of a forwarder only, should be governed by the law of the state in which the Joss happened, was not necessary to the decisión, and appears to be based on a strained inference from the observations of Mr. Justice Story, in Pope v. Nickerson, above cited, In a later case, the Supreme Court of New Hampshire resexved any expression of opinion upon a like question. Gray v. Jackson, 51 N. H., 9, 39.”
But, as we have already shown, our supreme court has decided that the laws of the place of performance govern. So that the demurrer to the second defense was properly sustained,
The next question is, whether a contract,signed by a shipper, agreeing upon the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, will be upheld and the shipper be limited to the agreed valuation, in case of loss through negligence.
It is claimed that this question has been answered in the negative in U. S. Express Co. v. Backman, 28 Ohio St., 144. An examination of that case will show that it was admitted that the goods were of greater value than that agreed upon, and that the carrier knew that fact at the time the contract was made. Jacobson & Co. v. Adams Express Co., 1 O. C. C., 381, is also cited. In that case, the court was of the opinion that there was no special contract. The second syllabus is as follows:
“In the foregoing case, a receipt of the company stating that in no event shall the holder demand beyond the sum of *130 $50.00, at which the article forwarded is valued, “not signed by the shipper and no statement made by him as to value,” is not a valid stipulation against a loss by fraud or negligence, ”
In Hunt v. Penn. Railroad Co., 112 U. S., 331, it is held: “Where a contract of carriage, signed by the shipper is fairly made with a railroad company, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.”
The opinion is by Mr. Justice Blatchford, and a careful study of it will show that most of the suggestions made in the argument of the case at bar, are disposed of there. It was contended for the plaintiff, Hart, that the bill of lading did not purport to limit the liability of the carrier to the amount stated in it, in the event of loss through the negligence of the defendant. He shows that the contract is not susceptible of that construction, and then says, it must be presumed from the terms of the bill of lading, that the rate of freight is graduated by the valuation.
“It is further contended by the plaintiff, that the defendant was forbidden, by public policy, to fix a limit for its liability for a loss by negligence, at an amount less than the actual loss by such negligence. As a minor proposition, a distinction is sought to be drawn between a case where a shipper, on requirement, states the value of the property, and a rate of freight is fixed accordingly, and the present case. It is said, that, while in the former case the shipper may be confined to the value he so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract, is not a valuation previously made by the shipper. But we see no sound reason for this distinction. ”
*131 It is the law of that court as well as of this state, that a common carrier may, by special contract, limit his common law liability; but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants, and, after reviewing the cases in that court in which it is so held, and stating that the court adhered to the views in them announced, he says, on page 340:
“The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told, by the plaintiff the sum inserted in the contract. The limitation as to value, has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is'based on that value. The shipper is estopped from saying, that the value is greater. The articles have no greater value for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonble, that such1 a contract,fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no. violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the-soundest principles of fair dealing and of the freedom of' contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract, if there is no loss, and to repudiate it in case of loss.”
In Railway Co. v. Sheppard, 56 Ohio St., 44, an examination of the record discloses that there was no agreed valuation of the horses, but the contract provided, “that in consideration of being released from liability, as hereinafter specified, the said company agrees to transport one car load of horses” at the reduced rates.
The contract in this case is not, as to the question under consideration, distinguishable from the one passed upon in Hart v. Pennsylvania R. R. Co., supra.
*132 That oases dealing with such contracts are to be distinguished from those dealing with contracts providing for a limited liability, is pointed out by Mr. Hutchinson, in his work on Carriers, see. 250.
The service required in the transportation of a race horse, may not be as great as in the case of an ordinary horse, but the risk is greater, and the business cannot be successfully or fairly conducted, unless the charge is based upon the risk as well as the service. This fact was recognized at an early day, and the common carrier was permitted to protect himself from imposition by a special acceptance, and, as Mr. Justice Blatchford points out, contracts such as these may be upheld by the same principle.
If a box or package is so disguised by the shipper as to cause it to resemble such a box or package as usually contains articles of little value, in order to avoid paying a reasonable compensation for its carriage, and the carrier is misled and accepts it as such, the shipper, in case of loss, cannot recover because of his fraud. Hutchinson on Carriers, secs. 214-216; Despatch Line v. Glenny, 41 Ohio St., 166.
If he misrepresents the value of the article, and the carrier is misled, the shipper is at least estopped to claim a greater value.
In the Lottawanna, 21 Wall., 558, 572, Mr. Justice Bradley, speaking of the general maritime law and of the importance of uniformity to the commercial world, says:
“The convenience of the commercial world, bound to gether, as it is, by mutual relations'of trade and intercourse, demands that, in all essential things wherein those relations bring them in contact, there should be a uniform law founded on natural reason and justice. Hence, the adoption by all commercial nations, (our own included), of the general maritime law as the basis and ground work of all their maritime regulations.
Considerations of advantage from uniformity upon a matter of so much importance,as well as of respect for the de *133 cisions of the highest court, lead us to hold, in the absence of a decision directly in point by our own Supreme Court, that the plaintiff below is estopped to claim that the horse was worth more than one hundred dollars.
John F. Dye, and L. F. Limbert, for Plaintiff in Error.
T. C. Miller, and Allread & Teegarden, for Defendant in Error.
The court erred in sustaining the demurrer to the first defense.
Judgment reversed. Demurrer to first defense overruled; demurrer to second defense sustained, and cause remanded.