# HART *v.* PENNSYLVANIA RAILROAD COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued November 13, 1884.—Decided November 24, 1884.

Where a contract of carriage, signed by the shipper, is fairly made with a railroad company, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.

H. shipped five horses, and other property, by a railroad, in one car, under a bill of lading, signed by him, which stated that the horses were to be transported "upon the following terms and conditions, which are admitted and accepted by me as just and reasonable. First. To pay freight thereon" at a rate specified, "on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation : If horses or mules, not exceeding two hundred dollars each.  .  .  .  If a chartered car, on the stock and contents in same, twelve hundred dollars for the car load.  But no carrier shall be liable for the acts of the animals themselves, .  .  .  nor for loss or damage arising from condition of the animals themselves, which risks, being beyond the control of the company, are hereby assumed by the owner and the carrier released therefrom." By the negligence of the railroad company or its servants, one of the horses was killed and the others were injured, and the other property was lost.  In a suit to recover the damages, it appeared that the horses were race-horses, and the plaintiff offered to show damages, based on their value, amounting to over $25,000.  The testimony was excluded and he had a verdict for $1,200. On a writ of error, brought by him : *Held*, (1) The evidence was not admissible, and the valuation and limitation of liability in the bill of lading was just and reasonable, and binding on the plaintiff ; (2) The terms of the limitation covered a loss through negligence.

Lawrence Hart brought this suit in a State court in Missouri, against the Pennsylvania Railroad Company, to recover damages from it, as a common carrier, for the breach of a contract to transport, from Jersey City to St. Louis, five horses and other property.  The petition alleges that, by the negligence of the defendant, one of the horses was killed and the others were injured, and the other property was destroyed, and claims dam-

ages to the amount of $19,800.   After an answer and a reply, the plaintiff removed the suit into the Circuit Court of the United States for the Eastern District of Missouri, where it was tried by a jury.

It appeared that the property was transported under a bill of lading issued by the defendant to the plaintiff, and signed by him, and reading as follows :

## " *Bill of Lading.*

### Form No. 39, N. J.

Limited Liability Live-Stock Contract for United Railroads of New Jersey Division.  No. 206.

JERSEY CITY STATION, P. R. R., ———, 187–.

Lawrence Hart delivered into safe and suitable cars of the Pennsylvania Railroad Company, numbered M. L. 224, for transportation from Jersey City to St. Louis, Mo., live stock, of the kind, as follows : one (1) car, five horses, shipper's count, which has been received by said company for themselves and on behalf of connecting carriers, for transportation, upon the following terms and conditions, which are admitted and accepted by me as just and reasonable :

First.  To pay freight thereon to said company at the rate of ninety-four (94) cents per one hundred pounds (company's weight), and all back freight and charges paid by them, on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation :

If horses or mules, not exceeding two hundred dollars each.

If cattle or cows, not exceeding seventy-five dollars each.

If fat hogs or fat calves, not exceeding fifteen dollars each.

If sheep, lambs, stock hogs, or stock calves, not exceeding five dollars each.

If a chartered car, on the stock and contents in same, twelve hundred dollars for the car-load.

But no carrier shall be liable for the acts of the animals themselves, or to each other, such as biting, kicking, goring, and smothering, nor for loss or damage arising from con-

dition of the animals themselves, which risks, being beyond the control of the company, are hereby assumed by the owner, and the carrier released therefrom.

Second.  Upon the arrival of the cars or boats containing said stock at point of destination, the shipper, owner or consignee shall forthwith pay said freights and charges, and receive said stock therein, and unload the same therefrom; and if, from any cause, he or they shall fail or refuse to pay, receive, or unload, as aforesaid, then said company or other carrier, as the agent of such shipper, owner or consignee, may thereupon have them put and provided for in some suitable place, at the cost and risk of such shipper, owner or consignee, and at any time or times thereafter may sell the same, or any number of them, at public or private sale, with or without notice, as said agent may deem necessary or expedient, and apply the proceeds arising there from, or so much thereof as may be needed, to the payment of such freight and charges and other necessary and proper costs and expenses.

Third.  When necessary for said stock to be transported over the line or lines of any other carrier or carriers to the point of destination, delivery of the said stock may be made to such other carrier or carriers for transportation, upon such terms and conditions as the carrier may be willing to accept; provided that the terms and conditions of this bill of lading shall inure to such carrier or carriers, unless they shall otherwise stipulate; but in no event shall one carrier be liable for the negligence of another.

Fourth.  All live stock transported under this contract shall be subject to a lien, and may be retained and sold for all freight or charges due for transportation on other live stock or property transported for the same owner, shipper or consignee.

Fifth.  This company's liability is limited to the transportation of said animals, and shall not begin until they shall be loaded on board the boats or cars of the company.  The owner of said animals, or some person appointed by him, shall go with and take all requisite care of the said animals during their transportation and delivery, and any omission to comply herewith

shall be at the owner's risk. Witness my hand and seal, this 20th day of October, 1879.

Lawrence Hart, *Shipper*. [L. S.]"

Attest:

E. Butter.

W. J. Charmers,

*Company's Agent.*"

At the trial the plaintiff put in evidence the bill of lading, and gave testimony to prove the alleged negligence and how the loss and injury occurred. He then offered to show that the actual value of the horse killed was $15,000; that the other horses were worth from $3,000 to $3,500 each; and that they were rendered comparatively worthless in consequence of their injuries. The defendant objected to this testimony, on the ground that it was not competent for the plaintiff to prove any damage or loss in excess of that set out in the bill of lading. The court sustained the objection and the plaintiff excepted. It appeared, on the trial, that the horses were race-horses, and that they and the other property were all in one car.

It was admitted by the defendant that the damages sustained by the plaintiff were equal to the full amount expressed in the bill of lading. The court charged the jury as follows: " It is competent for a shipper, by entering into a written contract, to stipulate the value of his property, and to limit the amount of his recovery in case it is lost. This is the plain agreement, that the recovery shall not exceed the sum of two hundred dollars each for the horses, or twelve hundred dollars for a car-load. It is admitted here, by counsel for the defendant, under this charge, that the plaintiff is entitled to recover a verdict for twelve hundred dollars, and, also, under the charge of the court, the plaintiff agrees that that is all. It is simply your duty to find a verdict for that amount." The plaintiff excepted to this charge. The jury found a verdict of $1,200 for the plaintiff (see 2 McCrary, 333); and after a judgment accordingly the plaintiff brought this writ of error.

The errors assigned are, that the court erred in refusing to permit the plaintiff to show the actual damages he had sus-

tained, and in so charging the jury as to restrict their verdict to $1,200.

*Mr. George M. Stewart* for plaintiff in error.—The following facts are clear : (1) that the property shipped was of much greater value than that named in the printed form of contract ; (2) that the carrier knew this before it received the stock for shipment ; (3) that the plaintiff was not asked the value of the property when he signed the contract, and no valuation had been agreed upon or attempted by the parties at that time ; (4) that the injury was the direct result of gross negligence of the carrier.—I. The defendant could not relieve itself by a bill of lading so procured from the common law liability for injuries resulting from its own negligence or the negligence of its servants. *Railroad Co.* v. *Lockwood*, 17 Wall. 357 ; *Express Co.* v. *Caldwell*, 21 Wall. 264 ; *Farnham* v. *Camden Railway Co.*, 55 Penn. St. 53 ; *American Express Co.* v. *Sand*, 55 Penn. St. 140 ; *Railway Co.* v. *Henlein*, 52 Ala. 606–615 ; *Railway Co.* v. *Abels*, 60 Mississippi, 1017 ; *Southern Express Co.* v. *Moon*, 39 Mississippi, 832 ; *Moulton* v. *Railway Co.*, 31 Minn. 85.—II. Being unable to relieve itself from such liability *in toto*, it could not fix the limit for its liability at less than the total damage sustained by its negligence. We do not deny that a shipper may be called upon to state value in order that proper freight rates may be charged for transportation, and that in such case he will be bound—that was the case in *Graves* v. *Railway Co.* 137 Mass. 33, and in *Harvey* v. *Railroad Co.*, 74 Missouri, 538. But in this case no representation of value was required ; no misleading statement of value was made ; and the shipper knew that the value of the property was greatly in excess of the sum named in the bill of lading. A shipper is not bound to disclose the value of property shipped unless the carrier demands it. *Jones* v. *Voorhis*, 10 Ohio, 145. A common carrier may undoubtedly limit his liability by agreement. *Farnham* v. *Railway Co.*, 55 Penn. St. 53. *Navigation Co.* v. *Bank*, 6 How. 344 ; but such exemptions must be clearly stated in the contract. *Maginn* v. *Dinsmore*, 56 N. Y. 168 ; and in the absence of such an agreement a carrier can-

not escape liability for his negligence. *Sager* v. *Portsmouth Railway Co.*, 31 Maine, 228; *Southern Express Co.* v. *Moon*, 39 Mississippi, 822; *Chicago, &c., Railway* v. *Abels*, 60 Mississippi, 1017; *Railway Co.* v. *Simpson*, 30 Kansas, 645; *City of Norwich*, 4 Benedict, 271; *Black* v. *Transportation Co.*, 55 Wis. 319; *Levenig* v. *Union, &c., Co.*, 42 Missouri, 88; *Newburger* v. *Howard*, 6 Philadelphia Rep. 174; *Railway Co.* v. *Henlein*, 52 Ala. 606. Such an agreement fixing the extent of the liability so extremely disproportionate to the value of the property is unjust and will not be upheld. *Express Co.* v. *Caldwell*, 21 Wall. 264; *Railway Co.* v. *Henlein*, 52 Ala. 606–615; *Railway* v. *Simpson*, 30 Kansas, 645. That the loss was occasioned by the negligence of defendants' agents does not admit of serious discussion.

*Mr. E. W. Pattison* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

It is contended for the plaintiff that the bill of lading does not purport to limit the liability of the defendant to the amounts stated in it, in the event of loss through the negligence of the defendant. But we are of opinion that the contract is not susceptible of that construction. The defendant receives the property for transportation on the terms and conditions expressed, which the plaintiff accepts " as just and reasonable." The first paragraph of the contract is that the plaintiff is to pay the rate of freight expressed, " on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation: If horses or mules, not exceeding two hundred dollars each. . . . If a chartered car, on the stock and contents in same, twelve hundred dollars for the car load." Then follow in the first paragraph, these words : " But no carrier shall be liable for the acts of the animals themselves, or to each other, such as biting, kicking, goring or smothering, nor for loss or damage arising from condition of the animals themselves, which risks, being beyond the control of the company, are hereby assumed by the owner, and the carrier

released therefrom." This statement of the fact that the risks from the acts and condition of the horses are risks beyond the control of the defendant, and are, therefore, assumed by the plaintiff, shows, if more were needed than the other language of the contract, that the risks and liability assumed by the defendant in the remainder of the same paragraph are those not beyond, but within, the control of the defendant, and, therefore, apply to loss through the negligence of the defendant.

It must be presumed from the terms of the bill of lading, and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that, as the rate of freight expressed is stated to be on the condition that the defendant assumes a liability to the extent of the agreed valuation named, the rate of freight is graduated by the valuation. Especially is this so, as the bill of lading is what its heading states it to be, "a limited liability live-stock contract," and is confined to live-stock. Although the horses, being race-horses, may, aside from the bill of lading, have been of greater real value than that specified in it, whatever passed between the parties before the bill of lading was signed was merged in the valuation it fixed; and it is not asserted that the plaintiff named any value, greater or less, otherwise than as he assented to the value named in the bill of lading, by signing it. The presumption is conclusive that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The rate of freight is indissolubly bound up with the valuation. If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed. If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation. The plaintiff cannot claim a higher valuation, on the agreed rate of freight.

It is further contended by the plaintiff, that the defendant was forbidden, by public policy, to fix a limit for its liability for a loss by negligence, at an amount less than the actual loss by such negligence. As a minor proposition, a distinction is sought to be drawn between a case where a shipper, on re-

quirement, states the value of the property, and a rate of freight is fixed accordingly, and the present case. It is said, that, while in the former case the shipper may be confined to the value he so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. But we see no sound reason for this distinction. The valuation named was the "agreed valuation," the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further.

We are, therefore, brought back to the main question. It is the law of this court, that a common carrier may, by special contract, limit his common-law liability; but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants. *New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 344; *York Co.* v. *Central R. R. Co.,* 3 Wall. 107; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Express Co.* v. *Caldwell,* 21 Wall. 264; *Railroad Co.* v. *Pratt,* 22 Wall. 123; *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 174; *Railway Co.* v. *Stevens,* 95 U. S. 655.

In *York Co.* v. *Central Railroad,* 3 Wall. 107, a contract was upheld exempting a carrier from liability for loss by fire, the fire not having occurred through any want of due care on his part. The court said, that a common carrier may "prescribe regulations to protect himself against imposition and fraud, and fix a rate of charges proportionate to the magnitude of the risks he may have to encounter."

In *Railroad Co.* v. *Lockwood,* 17 Wall. 357, the following propositions were laid down by this court: (1) A common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable, in the eye of the law; (2) It is not just and reasonable in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants; (3) These rules apply both to carriers of goods and to carriers of passengers for hire, and with special force to the latter. The

basis of the decision was, that the exemption was to have ap-plied to it the test of its justness and reasonable character. It was said, that the contracts of the carrier " must rest upon their fairness and reasonableness ; " and that it was just and reason-able that carriers should not be responsible for losses happen-ing by sheer accident, or chargeable for valuable articles liable to be damaged, unless apprised of their character or value. That case was one of a drover travelling on a stock train on a railroad, to look after his cattle, and having a free pass for that purpose, who had signed an agreement taking all risk of injury to his cattle and of personal injury to himself, and who was injured by the negligence of the railroad company or its servants.

In *Express Co.* v. *Caldwell*, 21 Wall. 264, this court held, that an agreement made by an express company, a common carrier in the habit of carrying small packages, that it should not be held liable for any loss or damage to a package deliv-ered to it, unless claim should be made therefor within ninety days from its delivery to the company, was an agreement which the company could rightfully make. The court said : " It is now the settled law, that the responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as the law can recognize as reasonable and not inconsistent with sound public policy." It was held that the stipulation as to the time of making a claim was reasonable and intrinsically just, and could not be regarded as a stipulation for exemption from responsibility for negli-gence, because it did not relieve the carrier from any obliga-tion to exercise diligence, fidelity and care.

On the other hand, in *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174, it was held that a stipulation by an express company that it should not be liable for loss by fire could not be reasonably construed as exempting it from liability for loss by fire occurring through the negligence of a railroad company which it had employed as a carrier.

To the views announced in these cases we adhere. But there is not in them any adjudication on the particular question

now before us.   It may, however, be disposed of on principles
which are well established and which do not conflict with any
of the rulings of this court.   As a general rule, and in the ab-
sence of fraud or imposition, a common carrier is answerable
for the loss of a package of goods though he is ignorant of its
contents, and though its contents are ever so valuable, if he
does not make a special acceptance.   This is reasonable, be-
cause he can always guard himself by a special acceptance, or
by insisting on being informed of the nature and value of the
articles before receiving them.   If the shipper is guilty of fraud
or imposition, by misrepresenting the nature or value of the
articles, he destroys his claim to indemnity, because he has at-
tempted to deprive the carrier of the right to be compensated,
in proportion to the value of the articles and the consequent
risk assumed, and what he has done has tended to lessen the
vigilance the carrier would otherwise have bestowed.   2 Kent's
Comm. 603, and cases cited; *Relf* v. *Rapp*, 3 Watts & Ser-
geant, 21; *Dunlap* v. *International Steamboat Co.*, 98 Mass.
371; *Railroad Co.* v. *Fraloff*, 100 U. S. 24.   This qualification
of the liability of the carrier is reasonable, and is as important
as the rule which it qualifies.   There is no justice in allowing
the shipper to be paid a large value for an article which he
has induced the carrier to take at a low rate of freight on the
assertion and agreement that its value is a less sum than that
claimed after a loss.   It is just to hold the shipper to his agree-
ment, fairly made, as to value, even where the loss or injury
has occurred through the negligence of the carrier.   The effect
of the agreement is to cheapen the freight and secure the car-
riage, if there is no loss; and the effect of disregarding the
agreement, after a loss, is to expose the carrier to a greater
risk than the parties intended he should assume.   The agree-
ment as to value, in this case, stands as if the carrier had asked
the value of the horses, and had been told by the plaintiff the
sum inserted in the contract.

The limitation as to value has no tendency to exempt from
liability for negligence.   It does not induce want of care.   It
exacts from the carrier the measure of care due to the value
agreed on.   The carrier is bound to respond in that value for

negligence. The compensation for carriage is based on that value.. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practised on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.

This principle is not a new one. In *Gibbon* v. *Paynton*, 4 Burrows, 2298, the sum of £100 was hidden in some hay in an old mail-bag and sent by a coach and lost. The plaintiff knew of a notice by the proprietor that he would not be answerable for money unless he knew what it was, but did not apprise the proprietor that there was money in the bag. The defence was upheld, Lord Mansfield saying: " A common carrier, in respect of the premium he is to receive runs the risque of the goods, and must make good the loss, though it happen without any fault in him, the reward making him answerable for their safe delivery. His warranty and insurance is in respect of the reward he is to receive, and the reward ought to be proportionable to the risque. If he makes a greater warranty and insurance, he will take greater care, use more caution, and be at the expense of more guards or other methods of security; and, therefore, he ought, in reason and justice, to have a greater reward." To the same effect is *Batson* v. *Donovan*, 4 B. & A. 21.

The subject-matter of a contract may be valued, or the damages in case of a breach may be liquidated in advance. In the present case, the plaintiff accepted the valuation as "just and reasonable." The bill of lading did not contain a valuation of all animals at a fixed sum for each, but a graduated valuation according to the nature of the animal. It does not appear

that an unreasonable price would have been charged for a higher valuation.

The decisions in this country are at variance. The rule which we regard as the proper one in the case at bar is supported in *Newburger* v. *Howard*, 6 Philadelphia Rep. 174; *Squire* v. *New York Central R. R. Co.*, 98 Mass. 239; *Hopkins* v. *Westcott*, 6 Blatchford, 64; *Belger* v. *Dinsmore*, 51 N. Y. 166; *Oppenheimer* v. *United States Express Co.*, 69 Ill. 62; *Magnin* v. *Dinsmore*, 56 N. Y. 168, and 62 Id. 35, and 70 Id. 410; *Earnest* v. *Express Co.*, 1 Woods, 573; *Elkins* v. *Empire Transportation Co.*, 81* Penn. St. 315; *South & North Ala. R. R. Co.* v. *Henlein*, 52 Ala. 606; *Same* v. *Same*, 56 Id. 368; *Muser* v. *Holland*, 17 Blatchford, 412; *Harvey* v. *Terre Haute R. R. Co.*, 74 Missouri, 538; and *Graves* v. *Lake Shore Ry. Co.*, 137 Mass. 33. The contrary rule is sustained in *Southern Express Co.* v. *Moon*, 39 Miss. 822; *The City of Norwich*, 4 Ben. 271; *United States Express Co.* v. *Backman*, 28 Ohio St. 144; *Black* v. *Goodrich Transportation Co.*, 55 Wis. 319; *Chicago, St. Louis & N. O. R. R. Co.* v. *Abels*, 60 Miss. 1017; *Kansas City, &c., Railroad Co.* v. *Simpson*, 30 Kansas, 645; and *Moulton* v. *St. Paul, &c., R. R. Co.*, 31 Minn. 85. We have given consideration to the views taken in these latter cases, but are unable to concur in their conclusions. Applying to the case in hand the proper test to be applied to every limitation of the common-law liability of a carrier—its just and reasonable character—we have reached the result indicated. In Great Britain, a statute directs this test to be applied by the courts. The same rule is the proper one to be applied in this country, in the absence of any statute.

As relating to the question of the exemption of a carrier from liability beyond a declared value, reference may be made to section 4281 of the Revised Statutes of the United States (a re-enactment of section 69 of the act of February 28, 1871, ch. 100, 16 Stat. 458), which provides, that if any shipper of certain enumerated articles, which are generally articles of large value in small bulk, "shall lade the same, as freight or baggage, on any vessel, without at the time of such lading giving to the master, clerk, agent, or owner of such vessel receiving

the same, a written notice of the true character and value thereof, and having the same entered on the bill of lading therefor, the master and owner of such vessel shall not be liable as carriers thereof in any form or manner, nor shall any such master or owner be liable for any such goods beyond the value and according to the character thereof so notified and entered." The principle of this statute is in harmony with the decision at which we have arrived.

The plaintiff did not, in the course of the trial, or by any request to instruct the jury, or by any exception to the charge, raise the point that he did not fully understand the terms of the bill of lading, or that he was induced to sign it by any fraud or under any misapprehension. On the contrary, he offered and read in evidence the bill of lading, as evidence of the contract on which he sued.

The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations. *Squire v. New York Central R. R. Co.*, 98 Mass. 239, 245, and cases there cited.

There was no error in excluding the evidence offered, or in the charge to the jury, and the judgment of the Circuit Court is                                                    *Affirmed.*