PENNSYLVANIA COMPANY v. CHRISTIAN C. YODER AND JAMES H. SULLIVAN.

1. BILL OF LADING, OHIO CONTRACT, WHEN.

A bill of lading which provides for the delivery of goods or chattels at a point within this state is an Ohio contract and subject to the rules applicable to such contracts laid down by the courts of Ohio.

2. ADMISSION OF EVIDENCE OF DEFENSES NOT PLEADED WITHOUT OBJECTION— EFFECT.

In order that a common carrier may avail himself of the stipulations of a bill of lading as a modification of his common law liability for injuries to the goods of another while in his charge, such stipulations should be pleaded, but where the bill of lading is introduced in evidence without objection and these questions presented and considered without objection the court will consider them without regard to the fact that the terms of the contract may not be sufficiently pleaded.

3. BURDEN ON COMMON CARRIER, WHEN.

Where a common carrier relies upon the stipulations of the bill of lading to secure immunity from liability for the loss of goods intrusted to his care, the burden is on him to prove that the loss was occasioned without his fault.

4. Contracts Exempting from Negligence, Void.

Common carriers cannot, by contract, exempt themselves from liability for full damages for a loss occasioned by their own negligence, or that of their servants, nor can they legally stipulate for a partial exemption from liability caused by like negligence. Hence, a provision in a bill of lading, that the liability of the carrier for the loss of horses shall not exceed $100 for each horse, will not exempt the carrier from liability for the full value of horses lost through his negligence or that of his servants.

Error to court of common pleas of Lucas county.

R. W. Kirkley and E. W. Tolerton, for plaintiff in error.

S. H. Kelley and John M. Carr, for defendants in error.

PARKER, J.

The action in the court below was by Yoder and Sullivan against the Pennsylvania Company to recover on account of the loss of two horses, which had become injured in being conveyed over the road of the defendant company, by the defendant as a common carrier, so that upon the arrival of the horses at their destination one of them had to be killed by order of the humane officer, and the other was so injured that it died in the course of eight or ten days. These horses, with several others, were shipped from Indianapolis, Indiana, to Toledo, Ohio, over the Pennsylvania road, and were brought around by the way of Mansfield, Ohio. The bill of lading provides for their transportation over this route and their delivery at this city, and because of the provision that they were to be delivered here and that that part of the contract was to be performed in Ohio it became an Ohio contract and subject to the rules applicable to such contracts laid down by the courts of Ohio.

The plaintiffs in their petition not only aver the facts showing that these horses were received by the defendant company as a common carrier (which devolved upon the company the duty of bringing the horses through in safety) but they aver that the injury to the horses was due to the negligence of the company, and this averment, if sustained, would have an influence upon the measure of damages.

The recovery in the court below was for $275 for the two horses, though the bill of lading contains a provision that the liability of the carrier for loss of horses shall not exceed $100 for each horse. That provision of the bill of lading not only fixes a valuation in case the horses were injured or destroyed without the company being at fault, but even in case it were negligent; and that provision, and the insistence of the company that that was a valid limitation, presents one question for the consideration of this court.

The answer of the defendant denies the negligence charged and avers that the horses were loaded into the car by the plaintiffs and were in charge of said plaintiffs while in transit, and that "said horses were

loaded by the plaintiff in said car in a negligent and careless manner, in that said horses were placed loose in said car and were not tied or fastened in any manner while they were therein, and that any damage which said horses may have sustained in shipment was caused by said negligent and careless loading by the plaintiffs and without the fault or negligence of defendant." And the rule laid down by the trial judge as to the burden of proof upon these charges of negligence and contributory negligence, presents another question for the consideration of this court in this case.

The answer does not set forth the terms of the bill of lading which are relied upon here as a modification of the common law liability of the railroad company. We are of opinion that the rules of pleading require that, in order that advantage may be taken of those special stipulations, they should be pleaded; but the bill of lading having been introduced in evidence, without objection, and these questions apparently presented and considered without objection, and it having been argued here as if they were presented in due form by the record, we have considered them without regard to the fact that the terms of the contract may not be sufficiently pleaded.

One of these specifications I have already adverted to—that is, that the liability of the shipper was to be limited to $100 for each horse, even though the company were guilty of negligence in conveying the horses.

Another provision that was discussed by counsel is this:

"That the said shipper is, at his own sole risk and expense, to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same."

Also:

"That the said shipper is to inspect the body of the car or cars in which said stock is to be transported, and satisfy himself that they are sufficient and safe, and in proper order and condition, and said carrier or any connecting carrier shall not be liable, on account of any loss of or injury to said stock happening by reason of any alleged insufficiency in or defective condition of the body of said car or cars."

There are other provisions in the contract that seem to contemplate and provide for some degree of care of the stock and some degree of assumption of risk upon the part of the shipper and for relieving the carrier to some extent from liability that it would have assumed had it undertaken to bring the stock through safely and to take care of it in all respects. Now it seems that the car was loaded at Indianapolis by the

shippers. In this car were placed at least twelve horses. Two partitions were put into the car; one end was partitioned off for a certain team of horses and that team was put into that end. They were not injured. The other end of the car was partitioned off by the shippers, and in that end was placed this animal which the humane officer required to be killed upon its arrival here. In the space between these partitions were placed nine horses; and it is said that sufficient room was left so that they could be properly loaded, that is to say, put in so closely that they could stand at ease, but could not move about so as to get down or turn around or trample upon or injure each other. The horses which were in the end of the car were tied. The horses in the middle space were not tied. It seems to be fairly shown by the preponderance of the evidence that these horses were properly loaded into the car, and that proper provision was made by the shippers for their safety. Witnesses say that these partitions so put in by the shippers were built strongly, of oak plank, studding and other material.

It seems that upon the arrival of the car here the partitions were down; one of them entirely, and the other perhaps only partially down, and that the partitions being down allowed the horses to move about— that they were not kept confined but left in a position where they might injure one another. There is testimony tending to show that the knocking down of one of these partitions was due to the rough handling of the car by the railroad company between Mansfield and Toledo. One of the partitions seems to have been down upon the arrival of the car at Mansfield. It would seem as if proper care for these horses upon the part of the persons who accompanied them would have required, upon their discovering, as they did, that one of these partitions was down at Mansfield, that they should have seen to its re-erection before the car was allowed to proceed further, but it is not apparent from the record that they had an opportunity to do this or that they had sufficient time or that they had the facilities, while the car was being transferred from the main line at Mansfield onto this branch line to Toledo to be brought through. On the way from Mansfield to Toledo the car was put into a train of coal cars, and it seems it was pretty roughly handled. The horses appear to have received no injury up to the time the train arrived within thirty or forty miles of Toledo. They were then seen by the shipper accompanying them and he discovered nothing wrong with them. The car arrived here quite early in the morning of the day following their shipment from Indianapolis. Later in the morning the shipper and his assistants went to unload the car and found the horses injured as I have described.

Upon this state of facts the court charged and held that the burden

of proof rested upon the railroad company to show that the injury was not due to its negligence in the premises, and we think that in this holding the court followed the rule laid down by the Supreme Court of this state in the case of Union Express Co. v. Graham, 26 Ohio St. 595, where it is said that:

"When a common carrier claims immunity for the loss of goods with which he had been intrusted, on the ground that such immunity is secured by a special agreement, the burden is on him to prove that the loss was occasioned without his fault."

I also refer to the case of United States Express Co. v. Backman, 28 Ohio St. 144, where it is said:

"In an action on the ground of negligence against a common carrier upon a bill of lading containing an exemption from liability from loss by fire, the burden of proof is on the carrier to show that the loss occurred within the terms of the exemption, and that the loss occurred without fault on his part."

Other cases are referred to in the opinion in the case last cited.

The trial court also held that this limitation upon the amount that might be recovered in case of loss was not valid and was not binding if the loss were due to the negligence of the railroad company; and therein we think the court followed the law as laid down by the Supreme Court of this state. Upon that subject I cite again the cases of United States Express Co. v. Backman, *supra,* and Railway Co. v. Sheppard, 56 Ohio St. 68 [46 N. E. Rep. 61]. I say, as laid down by the Supreme Court of this state, for the reason that the rule of this state is not the rule generally prevailing in the United States and is not the rule that has been laid down by the Supreme Court of the United States, but it seems to be adhered to by our own Supreme Court, and, of course, for us, is the law of this case. The views of the Supreme Court of the United States upon the subject are very fully expressed and a very full line of authorities cited in Hart v. Pennsylvania Co. 112 U. S. 331.

In the case of Cleveland, C. C. & St. L. Ry. Co. v. Simon, 8 Circ. Dec. 540 (15 R. 123), decided by the circuit court of Darke county, opinion by Judge Summers, there is a distinction based upon the knowledge of the carrier of the value of the stock or property being shipped, which might, perhaps, be applicable to this case, and the court held there that:

"A contract of carriage, fairly made and signed by a shipper, agreeing upon the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, will, even in case of loss through negligence, be upheld, and the shipper limited to the agreed valuation."

Notwithstanding the very able discussion of the cases and efforts at distinguishing the cases, it does not seem to us to be quite in harmony with the decisions of our Supreme Court upon the subject and we feel impelled to follow the rule as laid down by the Supreme Court in the cases cited. True this case is noted in Simon v. Railway Co. 63 Ohio St. 598 [60 N. E. Rep. 1134], as affirmed on the ground that the judgment of the circuit court involved the weight of the evidence. How that could be when the decision was upon demurrer to the answer, we cannot comprehend. It is probably true that error was prosecuted in the Supreme Court to a subsequent judgment of the circuit court in the same case. At all events the point here involved does not appear to have received the attention of the Supreme Court in that case. I will read a paragraph or two from the case of United States Express Co. v. Backman, 28 Ohio St. 144, 155:

"The Ohio cases hereinbefore cited make it clear that common carriers cannot, by contract, exempt themselves from liability for full damages for a loss occasioned by their own negligence or that of their servants. No more can they legally stipulate for a partial exemption from liability caused by like negligence. The public policy that avoids a contract for total exemption, will hold a contract void that provides for partial exemption in such case. The fact that by reason of such contract the carrier undertook the transportation of the goods for a diminished reward will avail him nothing."

And more to the same effect. In this case there is some evidence of negligence—enough so that the burden to disprove negligence rests upon the carrier, and we think it cannot be said that the verdict is against the weight of evidence, and finding that the rules of law laid down by the court in its charge are correct, the judgment of the court below will be affirmed.