104        APPELLATE COURTS OF ILLINOIS.

Swift et al. v. Louisville & Nashville R. Co., 180 Ill. App. 104.

## W. E. Swift and Frank Beatty, Trading as Swift & Beatty, Appellees, v. Louisville & Nashville Railroad Company, Appellant.

1. CARRIERS—*limitation of liability.* Under the Carmack amendment of June 29, 1906, to section 20 of the Interstate Commerce Act, the initial carrier may contract with the shipper that in case of loss or injury to the property the liability shall not exceed a stated amount.

2. CARRIERS—*common law liability.* The carrier cannot by agreement abrogate the common law rule as to damage for negligence but may by contract reduce the amount of its liability caused by such negligence.

3. CARRIERS—*when provision limiting liability is invalid.* Where plaintiffs shipped cattle over defendant's road and no bill of lading was issued until plaintiffs telegraphed for one when the cattle did not arrive at the proper time, a provision limiting the liability in case of loss or injury is not effective since the evidence shows the plaintiff's agents had no authority to make such an agreement.

4. CARRIERS—*when verbal contract of shipment is governed by common law.* Where a shipment of cattle under a verbal contract is unreasonably delayed enroute and not properly cared for, the carrier's liability is governed by rules of the common law.

5. CONVERSION—*when initial carrier is liable for.* Where consignee refuses to sign a receipt stating that a load of cattle were delivered in good condition, when in fact they had been unreasonably delayed and improperly cared for enroute and the connecting carrier keeps them for sixteen days and sells them, the initial carrier is liable for conversion.

Appeal from the City Court of East St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 23, 1913.

J. M. HAMILL and C. P. HAMILL, for appellant.

JAMES C. McHALE and D. J. SULLIVAN, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action of trespass on the case, brought by appellees, Swift & Beatty, against appellant, the Louisville & Nashville Railroad Company, to recover

damages for an alleged conversion of a carload of cattle shipped by appellee from Pulaski, Tennessee, to Normal, Illinois.

The following facts appear from the evidence. Appellees were stock dealers living at Waverly, Illinois, and as such had occasionally shipped a few car loads of stock from Pulaski, Tennessee, to different places in central Illinois. In purchasing these cattle at Pulaski, appellees engaged the services of a Mr. Stone, a member of the firm of Stone, Porter & White, stock dealers at Pulaski, to assist them in finding and buying such cattle as they desired to purchase, and for such service paid Mr. Stone $2.50 per head. Stone, Porter & White were not otherwise interested in the cattle. When purchased, the cattle were paid for by Swift & Beatty, and placed in a pasture near Pulaski, until a load was gathered together. On the 4th day of November, 1910, appellees having a sufficient number of cattle to make a car load, they were taken from the pasture by Beatty, one of the appellees, and delivered to appellant by placing them in the stock pens at Pulaski. These stock pens were the property of Stone, Porter & White, but they were used by appellant to receive cattle intended for shipment over its road. Stone, Porter & White were and had been for some time previous to the receipt of this car of cattle the agents of the appellant in the loading for shipment of cattle at that point. Mr. Stone, of said firm notified Mr. Barrack, appellant's agent, that these cattle were in the pens ready for shipment for Swift & Beatty & Company, at Normal, Illinois, and inquired when they could load them. Stone told Barrack the number of cattle, whose they were, and to what place they were to be shipped, and Barrack telephoned to Stone to load the cattle for the eight o'clock train that evening. The cattle were loaded and shipped out on the train which left Pulaski at eight o'clock in the evening. No bill of lading was issued at the time and on the following morning when Mr. Beatty, one of the

106    Appellate Courts of Illinois.

Swift et al. v. Louisville & Nashville R. Co., 180 Ill. App. 104.

appellees, called at appellant's freight office to get the bill of lading, but found no agent there. Beatty did not wait until the agent arrived but took the early morning train for his home. No bill of lading or written contract was issued to appellees at the time these cattle were shipped. The cattle were mostly Jersey heifers, cows, and a few calves. Among the lot was one bull which was tied in the end of the car. The other cattle were all loose. These cattle left Pulaski on Friday evening, November 4th, arrived at East St. Louis on Sunday, November 6th at 11:20 a. m., and were turned over to the stock yards at 2:35 p. m. on that day. They remained in East St. Louis until Tuesday, November 8th, at 2:20 p. m., when they were shipped over the Illinois Central Railroad to their destination at Normal, Illinois. Ordinarily these cattle would have arrived at Normal either Sunday or Monday morning. The delay in the arrival of the cattle caused appellees to make inquiry concerning them. They telegraphed appellant's agent at Pulaski, to send them a bill of lading. On receipt of the telegram appellant's agent sent appellees a combined bill of lading and contract dated November 4, 1910. This paper named Stone, Porter & White as consignors and also as consignees of the cattle (care of Swift & Beatty) and fixed the shipping rate at $64 to East St. Louis. A few days after the shipment at the request of appellees, Stone, Porter & White called on appellant's agent at Pulaski for a copy of the contract above mentioned and this copy as furnished named Stone, Porter & White as consignors and Swift & Beatty as consignees, and provided a through freight rate to Normal of $64. This contract produced by appellant was not signed by appellees or any one authorized to act for them.

When the cattle reached Normal, Illinois, Mr. Swift, one of the appellees, was notified of their arrival about four o'clock on Wednesday afternoon. When the cattle were unloaded it was discovered one cow was miss-

ing and others were gaunt, weak and wobbly from want of food. Swift, one of the appellees, complained to the agent of the Illinois Central at Normal about the condition in which the cattle were in, and said agent notified appellees that they would not be allowed to take the cattle until they had signed a receipt for the entire shipment, showing them to have been received by appellees in good condition. The number of cattle shipped from Pulaski was forty-nine. There were thirty-nine cows, one bull and nine calves. The agent of the Illinois·Central (the connecting line) at Normal claimed that the billing his company had, called for only thirty-eight cows, one bull and the calves. This agent also demanded of appellees that they surrender to him the bill of lading. Appellee had not been furnished a bill of lading by the agent at Pulaski. Appellees offered to accept the cattle and pay the charges, but refused to sign a receipt showing the condition and number to be satisfactory and correct. The cattle were taken by the Illinois Central Railroad Company to a lot nearby, where they were kept for sixteen days and then sold by the railroad company.

The cattle were not well fed during these sixteen days. They were poorly cared for. At the end of the sixteen days they were sold by the railroad company for $720. No part of the $720 so received has been offered or paid to appellees.

It further appears that the paper introduced in evidence by appellants, claimed by it to be the bill of lading of the cattle shipped, states that the cattle were shipped at a reduced rate and in consideration thereof the appellees had agreed to limit the carriers liability to an amount not exceeding $35 for a cow and calf and $30 per head for the other cattle. In their arguments opposing counsel do not disagree on the law so much as on the facts. Each side has argued from his own view point and each seems to have supported his theory by the citation of authorities, if the facts were found his way. The real contention however arises

over a disagreement concerning the contract of shipment.

If there was a bill of lading issued to appellees as claimed by appellants the case would come within the so-called Carmack amendment of June 29, 1906, to section 20 of the Interstate Commerce Act, which provides: "that any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

The cattle having been received at Pulaski, Tennessee, to be shipped to Normal, Illinois, gives the transaction the character of interstate transportation. By the amendment above referred to the initial carrier may contract with the shipper to limit its liability for damages to an agreed or designated valuation of the property shipped. In other words the carrier may agree with the shipper on a reduced freight charge that in case of loss or injury to the property the damages shall not exceed a stated amount. The carrier cannot

by agreement abrogate the common-law rule as to damages for negligence, but may by contract reduce the amount of its liability caused by such negligence. *Fry v. Southern Pac. Co.*, 247 Ill. 571; *Hart v. Pennsylvania R. Co.*, 112 U. S. 331.

In the case of the *Adams Exp. Co. v. Croninger*, decided at the October Term, 1912, of the Supreme Court of the United States (33 Sup. Ct. Rep. 148), the court in discussing this question there said: "It has therefore become an established rule of the common law, as declared by this court in many cases, that such a carrier may, by fair, open, just and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk. * * * That such a carrier might fix his charges somewhat in proportion to the value of the property is quite as reasonable and just as a rate measured by the character of the shipment. The principle is that the charge should bear some reasonable relation to the responsibility, and that the care to be exercised shall be in some degree measured by the bulk, weight, character and value of the property carried. * * * The statutory liability, aside from responsibility for the default of a connecting carrier in the route, is not beyond the liability imposed by the common law, as that body of law applicable to carriers has been interpreted by this court, as well as many courts of the states."

From the above holding of the Supreme Court of the United States it will be seen that the common carrier may graduate its charges to value and that a stipulation made by the shipper limiting recovery in case of loss or damage to an agreed value is an enforcible contract. Hence it follows that if appellant issued to appellees the bill of lading introduced in evidence and that the same was understandingly accepted by appellees, then appellees' right of recovery in this case

would be limited to an amount not exceeding $35 for a cow and calf and $30 per head for the other cattle. Counsel for appellees, while not controverting the rules of law which are claimed to apply in cases where shipments have been made under the Interstate Commerce Act and a bill of lading issued according to its provisions, insist that the Interstate Commerce Act does not apply in this case for the reason that the suit is grounded upon the common-law liability and not upon statutory enactment. Appellees contend further that the contract of shipment was a verbal one and the carrier having received the cattle and undertaken to transport them from Pulaski to Normal, brings the transaction under the rules of common law which require a common carrier to deliver goods at the point it contracts to convey them within a reasonable time, and if it fails to do so is liable whether it knew that its connecting line could not without unreasonable delay forward the goods or not; that the duty devolved upon the initial carrier to make necessary arrangements with connecting lines to complete the delivery.

The rules of law contended for by both appellant and appellees are beyond controversy. It only remains for the court to determine which is right under the evidence as to the nature of the contract that was made between the parties when the cattle were shipped. From a careful examination of the record in this case we have been unable to find sufficient evidence to show that any bill of lading was issued by appellant to appellees at the time the arrangement was made for the shipment of the cattle. The evidence shows that the only arrangement made with reference to the shipment was made by a Mr. Stone, of the firm of Stone, Porter & White, and the arrangement which was made by him was with appellant's agent over the telephone. Stone testified that he notified the agent that there was a car load of cattle at the yards which were to be shipped to Swift & Beatty at Normal, Illinois, that he told the agent the number of the cattle and that the

agent replied over the telephone that he would let him know when to load them and later, during the same evening, he notified Mr. Stone to load the cattle for eight o'clock. The cattle were loaded and sent out on the evening of November 4, 1910, under the contract as made between Stone and the agent, as testified to by Stone and not disputed by the agent. The evidence also shows that Mr. Beatty, one of the appellees, applied at the office of appellant the next morning for the bill of lading, but that the man in charge of the office advised him that the agent was out, that he could not get it until he came. Mr. Beatty left for his home on the early train and did not receive any bill of lading. The evidence shows without controversy that no writing of any kind was issued by appellant or received by appellees, nor by Stone, Porter & White, with reference to this shipment. There is no evidence to show that anything was said by the agent of appellant to appellees, nor to Stone, Porter & White, concerning a lower rate of shipment or a limitation of the amount of damages. There is no evidence tending to show that the appellees knew that appellant made different ratings for shipments. When the cattle failed to arrive at Normal within a reasonable time Swift, being there to receive the cattle, telegraphed to appellant's agent at Pulaski, requesting him to forward a bill of lading. Appellant's agent admits he received such telegram, and in response to such telegram appellant forwarded what it claims in this case to be the bill of lading. At the request of appellees Mr. Stone went to the office of appellant at Pulaski for the purpose of seeing about the bill of lading. This was a few days after the shipment. The agent gave him at that time a bill of lading or contract marked "copy." This copy is also in evidence. The copy, named Stone, Porter & White as consignors and Swift & Beatty, Normal, Illinois, as consignees, giving the number and character of the stock shipped as being forty cows and nine

112    Appellate Courts of Illinois.

Swift et al. v. Louisville & Nashville R. Co., 180 Ill. App. 104.

calves; the freight charge $64. This copy so-called, was signed by the appellant by T. R. Barrack, agent. No other name was signed to the paper. The other paper claimed by appellant to be the real contract of shipment named Stone, Porter & White as consignors and Stone, Porter & White, consignees, care of Swift & Beatty, Normal, Illinois. The freight charge was fixed at $64 to East St. Louis. This contract was signed by the Louisville & Nashville R. Company, by T. R. Barrack, agent, and purports to be signed by Stone, Porter & White. The evidence is however that neither Stone, Porter nor White signed this contract.

The evidence further shows that Stone, Porter & White were not the general agents of Swift & Beatty and had no authority to make any agreement or stipulations to relieve appellant from damages on account of a reduced freight charge. We can only conclude therefore that the contract of shipment was a verbal contract and being such is governed by the rules of common law. The evidence clearly shows that the cattle were unreasonably delayed enroute and were not properly cared for; that they were held in East St. Louis without sufficient food for more than forty-eight hours; and arrived in Normal in a gaunt and weakened condition; that one of the cattle had been lost somewhere along the road. Some controversy arose on the trial as to whether the lost animal was a cow or a bull. The evidence is sufficiently clear to show that the bull was received at Normal; that the lost animal was one of the cows.

When appellees called on the agent of the Illinois Central at Normal to receive the cattle they were met with the demand from the agent that a receipt be signed showing the cattle all arrived in good condition, and on appellees' refusal to sign such receipt the said agent refused to deliver the cattle to them.

The railroad agent at Normal had no right to exact

Swift et al. v. Louisville & Nashville R. Co., 180 Ill. App. 104.

from appellees a receipt of that character and appellees were clearly within their rights when they refused to sign such a receipt, because it did not truthfully state the fact and conditions concerning the cattle. The Illinois Central being a connecting line to appellants', by their conduct in refusing to deliver the cattle to appellees on their request without condition, and their subsequent acts in selling the cattle at public auction, made the appellant under the law liable to appellees for damages for conversion of the cattle, and under the evidence in this case the court cannot say that the amount of damages awarded to plaintiff by the jury was excessive.

Many errors have been assigned on this record which appellant claims there should be a reversal in this case, many of them being based on refused instructions. There were forty-eight instructions offered on behalf of the defendant; twenty-seven of these were given by the court and every phase of the case proper for the jury to consider was fully covered by the instructions given. Any attempt to discuss the twenty-one refused would carry this opinion beyond reasonable limits. We fail to find there was any prejudicial error in refusing the instructions complained of.

Holding under the law and evidence in this case that the plaintiff had a clear right of recovery and that the damages are not excessive, the judgment of the lower court will be therefore affirmed.

*Affirmed.*