## Case No. 9,789.

### The MORAVIAN.

### [2 Hask. 157.] ¹

### District Court, D. Maine. June, 1877.

CARRIERS—LIABILITY FOR DAMAGE—BILL OF LADING—HOW GOODS PACKED—BURDEN OF PROOF.

1. A bill of lading, reciting, "two cases sewing machines shipped in good order and condition;

¹ [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

quantity, condition and contents unknown; not accountable for breakage," is evidence of the good external condition of the cases when received by the carrier, and casts the burden upon the owner to prove that an injury to the machines resulted from the negligence of the carrier.

2. The fact, that the cases were in good order when received and broken when delivered, raises the presumption that they met with injury, while in the possession of the carrier, damaging their contents.

3. Evidence, showing that the injury would not have resulted in the common course of events, with proper care, in the absence of explanation, proves it to have been caused by negligence.

4. Shippers of merchandise of large experience, in absence of evidence to the contrary, are presumed to use the best method of packing the same to be carried over land or upon the sea.

In admiralty. Libel in rem against the steamship Moravian for damages to merchandise shipped by her at Liverpool, England, for Portland, Maine. The claim and answer alleged that the claimants were not liable by reason of the stipulations in the bill of lading, and because the damage did not result from any act of their own or of their servants, but from improper packing of the goods, and that it was inflicted before they came to their possession.

Emery S. Ridlon and Sewall C. Strout, for libellants.

John Rand, for claimants.

FOX, District Judge. The libellant, Palmer, ordered from the manufacturer at a place in England, said to be about sixty miles from Liverpool, two sewing machines, to be forwarded to him at Portland by the Allan steamers. These machines, none of which are made in this country, are of a novel description, and are used for the sewing of boots and shoes, having an iron plate about two and one-half feet long, and ten to twelve inches in width. The machines were in pieces, packed in two pine boxes, one of which contained, with other portions of the machines, the two plates, which were secured by cleats at each end of the box.

These boxes, it is said, were taken by sail to Liverpool, then placed on board the Moravian about the first of last March. The vessel arrived here the thirteenth. Her cargo was placed in the sheds of the company, which are bonded warehouses. The libellant was notified of their arrival about the twenty-fourth of March, by the presentation of the freight bill; but it was not paid for about four weeks, the goods remaining in the shed until April twenty-fourth, when they were taken to the custom house for examination by the appraisers. On opening this box, the upper plate was found broken about ten inches from the narrow end, and this piece had evidently lapped forward upon the other portion of the plate,

and, by its friction, had rubbed the paint, rendering the plate in spots quite bright. After the box had been opened, it was carefully examined, and the end next to the fracture was found to be split nearly across, originally a seamcrack, and much widened, and this split had extended across one side of the box for some distance. By handling the box, these cracks had been enlarged so that they now extend across the side and end, and the portion of the box above the cracks is entirely separate from that below. There is also an indentation on the end of the box near the plate, as if it had been caused by a blow from an iron bar.

To recover for the damages thus done to this plate the present libel was instituted. In the bill of lading for the merchandise, is found the ordinary language, "two cases sewing machines, shipped in good order and well conditioned;" but further on it is stipulated that "quality, condition and contents are unknown, and the ship owner not accountable for the same;" and in the margin is also found, "not accountable for breakage."

In Clark v. Barnwell, 12 How. [53 U. S.] 272, the bill of lading was substantially of a similar character. It recited that the goods were shipped to be delivered in like good order, etc., but there was also added "contents unknown." It was then decided by the supreme court of the United States that this acknowledgment of the master, as to the condition of the goods when received on board, extended only to the external condition of the cases, excluding any implication as to the quantity or quality of the articles, their condition at the time received on board, or whether properly packed in boxes or not.

Where, by the terms of the bill of lading, the ship is exonerated from liability for certain losses, it has also been decided by the supreme court, that, when such losses are occasioned by the negligence of the ship owner or his servants, the ship still remains accountable for losses so caused; but the burden of proof is changed, and the libellant must establish such negligence. New Jersey Steam Navigation Co. v. Merchants' Bank of Boston, 6 How. [47 U. S.] 344. The Invincible [Case No. 7,055].

The box with its contents were produced in court. From an examination of both parts of the broken plate, I can have no doubt that the fracture occurred before the goods left the ship. The paint is very much worn from the upper surface of the larger portion of the plate upon which the smaller portion chafed by the motion of the ship at sea, and the grains of the metal of the broken end are also worn down and smoothed, indicating that the movements of the one piece upon the other must have continued for a much longer time than merely while the box was being taken from the ship to the shed. I believe the counsel on both sides are satisfied with this conclusion of the court. The teamster who took

the box to the custom house testifies that it was carefully done by him, so that the injury could not have then occurred.

It is said that the plate may have been broken before the box was received by the carrier, as it was transported sixty miles, more or less, by rail from the factory to Liverpool. The bill of lading, according to the decision of the supreme court of the United States, is evidence that the box, so far as its external condition would indicate, was in good order when received by the ship; and, as it was found to be split and broken at the end and on one side when received at the custom house, I think that the fair inference is that, while on board of the ship, or while in charge of those employed in her lading, it met with some injury which damaged the box and its contents.

The box being thus apparently in good order when received by the carrier, and found to be injured when delivered up by him, the burden is on the libellant under the terms of the present bill of lading to establish that the damage was occasioned by the negligence of the carrier. The rule of law laid down in the Exchequer, Scott v. London & St. K. Docks Co., 3 Hurl. & C. 597, is that, when the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.

On the end of the box, which is not broken, there are a number of indentations worn quite smooth, and, as I think, clearly indicating that during the voyage this box stood on that end, resting upon the heads of a number of bolts which were pressed into the wood of the box by the weight upon it, or else that the box fell some distance, striking this end upon the bolts. The other end, as before stated, was badly split through, not entirely broken off when brought to the custom house; and there is also a dent in the wood just over the split, indicating a blow from some sharp, hard instrument; and it is strenuously contended that by such a blow the plate was broken, the force of the blow communicating to the plate through the cleat nailed to the end of the box and the iron protuberance upon the plate, which was fitted into a notch in the cleat to make steady and secure the plate. I do not feel certain that the injury was thus occasioned. I rather think it more probable that it was caused by heavy weights placed upon the box, or by rough handling from the stevedores and laborers when moving the box and storing it on board the ship.

The box being under the control of the carrier who was, by the bill of lading, informed as to its contents, and being apparently in good order, and such serious damage to such a package not ordinarily happening with due care, reasonable credence is afforded under the rule in Scott v. London & St. K. Docks Co., that the injury arose from want of due care, unless a satisfactory explanation is given in this behalf.

In the present case, no evidence is produced by the ship-owners as to the position of this box on ship-board, whether heavy articles were or not placed upon it, or whether it was at any time by accident or otherwise injured and broken by the servants of the ship-owners while under their control. For all that appears, it may have slipped from the slings when going on board and have fallen the whole depth of the hold, or have been thrown down with great violence, the servants of the carrier been guilty of the greatest negligence in their duty in this behalf, and the matter kept concealed from the court. There is certainly nothing to discredit any such theory.

From the marks upon the box and the damage it has sustained, it is quite apparent that it had not received that care and fair usage which a package of sewing machines should have received; and while there was nothing on the box to indicate the contents, as I have before stated, the carrier was fully advised in relation to it.

The claimants contend that the plate which was broken was not securely packed, and that for this cause they are not to be held accountable for the damage, even if they were otherwise negligent. A large number of witnesses have been examined upon this branch of the case by each side, and the matter is certainly not free from doubt. The manner in which this plate was placed in the box is beyond dispute. The two plates were a little larger than the box, and were laid in diagonally, resting upon cleats of wood which were nailed to each end of the box, the upper one, which was broken, being kept in position by a projection upon one end of the plate that fitted into a notch cut in the cleat at the broken end. The ends of the plate rested upon the cleats, and there was no other support under the plate; nothing between the plates; the ends of the plates did not touch the ends of the box, nor did the box cover rest on the plate; both plates were secure and immovable so long as they were unbroken.

It is said by quite a number of witnesses that this packing was defective because the plates were only supported at the ends with nothing around or between the plates to break the force of any blow or strain that might happen to the box; that if the plate had been enveloped in straw or shavings, it would not probably have been broken, or at any rate would have been much more likely to escape a fracture from any blow, or by any fall of the box. Other witnesses express an entirely different opinion, and say that the plate was well secured, in their judgment, so as not to be liable to injury if properly handled, and that the soft packing would not have protected the plate, if exposed to unrea-

sonable violence. A number of witnesses of very extensive experience in the packing of sewing machines state that they have never known the manufacturer to use any kind of soft packing about these machines when fitted for transportation; that they are only secured in place by cleats, and they have sent them long voyages in safety thus packed; but none of these witnesses, I think, have had any acquaintance with machines having so large a casting as the present.

In this conflict upon the question, whether the box was packed with reasonable care and skill to protect its contents if fairly handled, I think the court may well take into consideration the fact that these manufacturers, Pitt Bros., had been so long and extensively engaged in this business that they had become so well known in this country that goods were ordered of them by parties on this side of the water.

If permitted to refer to their hand bills found in the box with the broken plate, it appears that they had been engaged in this branch of business more than twenty-five years. During all this time, we must believe that they must have shipped large numbers of these machines to various quarters of the globe, and by experience had ascertained the safest and best method of packing the same for transportation by land and by sea. If their machines were delivered in bad order, they certainly must have been informed of their condition; and it cannot be presumed that they would continue a practice which would thus endanger the safety of their merchandise and subject themselves to all the consequences attending a negligent or unskillful method of packing their goods. They would clearly be answerable for damages to the party injured, if they were not packed with due care and precaution, or if they were still the owners of the property, they would subject themselves to the loss occasioned by their own neglect.

I must presume that in twenty-five years they could not but have ascertained the safest method for packing these plates, and that in the present instance, as there is nothing to establish the contrary, they adopted it. Whether shavings or other soft material should have been used was expressly brought to the attention of the packer of this box, as it appears that some portions of the machine in this box were packed with shavings, manifesting that this material was at his command, and his judgment was applied to the determination of whether it was or not expedient that the plates should be thus packed, or whether the course adopted of securing them in the box, as was done, was on the whole the most judicious.

This view, I think, is quite persuasive and influences my opinion, so that I am brought to the conclusion that the libellant is entitled to recover for damages occasioned by the negligence of the carrier to his property. Decree for libellant.