# HONOLULU RAPID TRANSIT AND LAND COMPANY
## *vs.*
# AMERICAN-HAWAIIAN STEAMSHIP COMPANY.

### November 3, 1906.

*Receipt for goods in bill of lading:*   A bill of lading receipting for goods as shipped *in apparent good order and condition,* is no more favorable to the carrier than one receipting for goods as shipped *in good order and condition,* as they are the same in law.

*Effect of bill of lading receipting for goods as in apparent good order and condition—Burden of proof:*   A bill of lading receipting for goods as shipped *in apparent good order and condition* is *prima facie* evidence that the goods were in good order at the time of shipment, and the burden of proof is then on the carrier to show that the goods were not in good order or were not properly packed when received or were damaged through some excepted peril.

*Loss or damage through excepted peril of the bill of lading—Burden of proof:*   Where loss or damage of goods is caused by one of the excepted perils of the bill of lading, the burden of proof is on the shipper to show negligence by the carrier.

*Inspection of goods at place of delivery—Bill of lading receipt:*   When condition of goods at place of delivery shows no evidence that they were improperly packed but rather that they were properly packed, this goes to the support of the *prima facie* evidence of the bill of lading receipt that they were received in apparent good order.

*Injury that would not have been likely to occur with proper care— Significance of:*   Where injury is such as would not have been likely to occur under proper care, it is reasonable evidence. in the absence of explanation by carrier, that it arose through negligence.

*Special agreement limiting liability of carrier—Gross negligence:*   Special agreement limiting the liability of owner may not be pleaded as exempting him from responsibility for injury resulting from his negligence.

*External injury at place of delivery:*   External injury appearing on a package at place of delivery, relieves shipper from necessity of proving condition of package at place of shipment, if it was receipted for as in good order.

*Stowage of plate glass—Negligence:*   It is negligence in a carrier to stow cases of plate glass 5 by 3½ by 7 feet 9¾ inches, weighing 970 pounds, on the flat side on ship board.

*Presumption of proper packing of goods:*   Shippers of merchandise of large experience, failing evidence to the contrary, are presumed to use the best methods of packing the same to be carried by land or sea.

*Failure of shipper to mark cases of plate glass as "glass"—Bill of lading:* Failure of the shipper to mark cases of plate glass as "glass" does not relieve the carrier of liability for breakage, if they are described in the bill of lading as plate glass.

*Damages—Statement of value of goods in bill of lading:* Damages for injury to goods in possession of a carrier are limited, as to value, to the statement of their value in the bill of lading.

*In Admiralty:* Libel *in personam* for damage to merchandise.

*Castle & Withington,* Proctors for Libelant.
*Thompson & Clemons,* Proctors for Libellee.

DOLE, J.  The parties in this case are both corporations, the libelant being an Hawaiian corporation engaged in operating a system of street railways in the city of Honolulu, and the libellee a New York corporation operating a line of steamships between the Atlantic coast and the Pacific coast and the port of Honolulu.  The libelant complains that it shipped through its agents on board of a vessel of the libellee lying in the port of New York, eight cases of plate glass in good order and condition, to be carried to the port of San Francisco and there to be transferred to another vessel of the libellee to be carried by it to the port of Honolulu in the Territory of Hawaii; and that three of such cases were delivered by the libellee at the latter port in such a damaged condition that the contents thereof were of no value; that such damage was due to the negligence and fault of the libellee, and was in the amount of $389.08, for which it prays judgment.  The libelant further alleges that it has performed all of its obligations in the matter at issue.

The answer denies that libelant has done and performed all its agreements and obligations as alleged, and avers that it has no knowledge as to the allegation of the libel that such eight cases were shipped in good order and condition on its vessel and requires proof thereof; and further avers that it has no knowledge as to the allegations that three of the said cases of plate glass were not delivered in such good order and condition in said Honolulu as they were received but were in such bad

order and condition that they were worthless and of no value, and requires proof thereof; and denies that said three cases of plate glass were damaged by its negligence and default and the allegation that the premises of the libel are true and within the admiralty and maritime jurisdiction of the United States and of this court. The answer further avers that the cases were received by the libellee from the agents of the libelant in New York in apparent good order and condition and were forthwith loaded upon and properly stowed in one of its vessels and were carried to San Francisco by such vessel and there were transferred to another of its vessels and by her carried to the port of Honolulu, and that both of the said vessels were, at all of the times referred to, seaworthy, properly manned and equipped; and it further alleges that the said three cases of plate glass alleged to have been damaged, were at the time of delivery to the libellee, insufficiently packed, in that said plate glass was incased in three boxes or covers each insufficient to protect the contents thereof from breakage either in ordinary handling or from pressure natural and usual in sea voyages, and that the libelant neglected to mark such cases in the manner in which cases containing glass are usually marked, to wit, " glass," and neglected to mark such cases in any manner so as to show or give notice of the breakable nature of their contents, and that the shipment was made by virtue of the contract and stipulations in the bill of lading delivered to the agents of the libelant in New York. It appears that the size of these cases was 5 by 3½ by 7 feet 9¾ inches; that the weight was from 970 to 975 pounds.

The law of liability of a carrier under the issue raised by the pleadings is as follows: Where the bill of lading receipts for the goods as shipped in good order and condition, or in apparent good order and condition, it is *prima facie* evidence that the goods were in good order at the time of shipment and the burden of proof is then upon the carrier to show that the goods were not in good order or not properly packed when they

were received or that they were damaged by some excepted peril.

"It is insisted, on the part of the respondents, that, as the bill of lading contains the usual clause, 'weight, contents and value unknown,' the burden lies upon the libelant to show, in the first instance, that the goods were put up in the cases, by the manufacturer or shipper, in good order and condition; and that, in the absence of such proof, the court are bound to presume that the injury to the goods arose from defects existing when they were packed for shipment, or which occurred previous to the shipment. The law is otherwise. Unless there is something in the appearance or condition of the goods, on their being opened after delivery, affording ground for reasonable inference that they were improperly packed, or packed in an unfit state for transportation, or unless some evidence to that effect is given, the contrary will be presumed. Cowen & Hill's Notes to Phil. Ev., 1439; *Price v. Powell,* 3 Comst. (3 N. Y.) 322; *Barrett v. Rogers,* 7 Mass. 297; *Clark v. Barnwell,* 12 How. (53 U. S.) 272." *English v. Ocean Steam Nav. Co.,* 2 Blatch., 425, 426; 8 Fed. Cas. (No. 4,490) 719, 720.

A receipt in the bill of lading of the goods *in apparent good order and condition* is no more favorable to the carrier than a receipt *in good order and condition,* as a receipt in the latter form is merely evidence that the goods were received in good order and condition so far as was discernable from the external or apparent condition of the package without opening or uncovering the same. *The Oriflamme,* 1 Sawyer, 176, 178: 18 Fed. Cas. (No. 10,571) 810; *Clark v. Barnwell,* 53 U. S. (12 How.) 272, 283.

It "may be taken to be perfectly well established    *    *    * that the signing of a bill of lading acknowledging to have received the goods in question, in good order and well conditioned, is *prima facie* evidence, that as to all circumstances which were open to inspection and visible, the goods were in good order; but it does not preclude the carrier from showing, in case of loss or damage, that the loss proceeded from some

cause which existed, but was not apparent, when he received the goods, and which, if shown satisfactorily, will discharge the carrier from liability. But in case of such loss or damage the presumption of law is, that it was occasioned by the act or default of the carrier, and, of course, the burden of proof is upon him to show that it arose from a cause existing before his receipt of the goods for carriage, and for which he is not responsible." *Hastings v. Pepper,* 28 Mass. (11 Pick.) 43; *The Oriflamme,* supra, 178, 180; *The Live Yankee,* Deady, 420: 15 Fed. Cas. (No. 8,409) 656, 658; *Price v. Powell,* 3 N. Y. (3 Comst.) 322, 325; *Bazin v. Steamship Co.,* 3 Wall. Jr. 229: 2 Fed. Cas. (No. 1,152) 1096, 1100; *Dowsett v. Wilder's S. S. Co.,* 2 U. S. D. C. Haw., 173, 179; *The Invincible,* 1 Lowell, 225: 13 Fed. Cas. (No. 7,055) 78.

The case of *Wertheimer v. Pennsylvania R. R.,* 1 Fed. Rep. 232, cited by the defense as an authority for holding that the burden of proof of negligence of the carrier is on the shipper, is not applicable to this case in that the loss in that case occurred through one of the perils excepted by the bill of lading, to wit, " loss or damage by fire, unless it could be shown that such damage or loss occurred through the negligence or default of the agents of the company." The decision cites *Clark v. Barnwell,* supra, and *Transportation Co. v. Downer,* 78 U. S. (11 Wall.) 129, in support of its ruling on this point; in both of which cases the decisions turned on the circumstance of loss by an excepted peril, which is not an issue in the case before the court. The cases of *Railroad Co. v. Reeves,* 77 U. S. 176, *Union Ins. Co. v. Shaw,* 24 Fed. Cas. (No. 14,366) 580, and *Washburn-Crosby Co. v. Johnston & Co., Ltd.,* 125 Fed. Rep. 273, also cited by the defense on this point, are substantially to the same effect.

There are other authorities which leave the matter of liability to the mere preponderance of testimony. " Unless it appears from the evidence that the machine claimed to have been injured was delivered to the defendant company or some connecting line of railroad in condition other than it was in

when delivered at Rockdale, you may presume that the defendant did its duty, and delivered the machine in the condition it was in when received." *Missouri Pacific Ry. Co. v. Breeding,* 16 S. W. (Ky.) 184, 185. Also, "A railroad receipt for goods 'in apparent good order' does not relieve the consignor from proof of their condition at the time of delivery. Each party stands upon his proofs, and the verdict must follow the preponderance of testimony." (Syllabus) *C. & A. R. R. Co. v. Benjamin et al.,* 63 Ill. 283. The decision in the case of *Witling v. St. Louis & S. F. Ry. Co.,* 101 Mo. 631, 640-641, may differ somewhat from the foregoing citations as to the burden of proof being on the carrier, but I do not think that it differs radically, and it certainly agrees with the authorities cited making a preponderance of evidence decisive. It says, "It devolved upon the plaintiff to satisfy the minds of the jurors from the evidence, taken as a whole, that the negligence of defendant caused the damage complained of, or was an active, co-operating cause in producing the damage."

This class of authorities, which makes the preponderance of testimony decisive of the liability of the carrier, is not necessarily adverse to the general rule referred to above, for if the condition of the goods at place of delivery shows no evidence that the goods were improperly packed, but rather that they were properly packed, this goes to the support of the *prima facie* evidence of the bill of lading receipt that they were received in apparent good order and condition.

If the injury is such as would not have been likely to have occurred under proper care, it affords reasonable evidence, in the absence of explanation by the carrier, that the accident arose from want of care. *The Moravian,* 17 Fed. Cas. (No. 9,789) 725, 726; *Witling v. St. Louis & S. F. Co.,* supra.

Where there is a special agreement between the shippers and the owners by which the liability of the latter is limited, the contract cannot be pleaded as exempting the owners from responsibility for damage resulting from gross negligence or

misfeasance in the master or his servants. *Merriman v. The May Queen,* Newb. 464: 17 Fed Cas. (No. 9,481) 136, 139.

In regard to the condition of the three packages in question when delivered in Honolulu, three of the witnesses for libelant and three witnesses for the libellee all testified that the contents of these three cases rattled when handled; one of such witnesses for libellee did not remember how many there were that rattled. Mr. Wolfe, witness for the libelant, testified that one of these cases was injured,—the lateral board on the side being broken completely off, but held in place by the nails. The cases were described in the answer to the seventh interrogatory of the libellee, as to the thickness of the boards of which they were constructed, as follows: " Ends 1 5-16 inches, top 1½ inches, sides ½ inch, reinforced at the edges by a strip 6 inches wide by ⅞ inches thick." Wolfe's testimony evidently refers to the six-inch reinforcing strip at the edges. The fact that this strip was broken in two is evidence of rough usage in the nature either of great pressure or of a blow, and this injury being on the outside of the case could not have occurred before the shipment of the goods in New York without its being noticed by libellee's agents,—the bill of lading receipting for them as in apparent good order and condition.

The case of *The Columbo,* 6 Fed. Cas. (No. 3,040) 178, which takes a ground somewhat modifying the general rule as to the burden of proof above referred to, says, "When, therefore, a question arises as to the condition of the contents of casks or bales, in a case where this clause is inserted in the bill of lading (referring to the usual clause *weight and contents unknown*), the burden rests upon the shipper, in the first instance, to prove the condition of the goods at the time of shipment. * * * If the external covering of the goods is damaged when they are delivered, so as to account for an injury to the contents, then the evidence may be dispensed with. The admission in the bill of lading would then be *prima facie* sufficient." This admission doubtless refers to the expression of bills of lading "received in apparent good order and condi-

tion." This positive evidence of rough usage relates only to one of the three cases and is sufficient in the view of the *Columbo* case to dispense with the burden of proving the condition of such case at the time of shipment.

The inspection of the goods at the place of delivery shows by a preponderance of evidence that they were properly packed and that the cases were sufficient to protect the contents if properly stowed, and the evidence of witnesses on both sides, that the damaged condition of the goods at the place of delivery · was obvious to any one handling them, supporting irresistibly the conclusion that if the goods had been in the same condition at the port of shipment, it could not have failed to have been known to the carrier on receiving them, and being such positive notice to it of their damaged condition, it would not have been likely to have signed a receipt for them as "in apparent good order and condition."

The defense makes much of the testimony of the witness Harris, that a case with ¾ inch sides would be a "fair container." It is not clear as to what size of case he had in mind when he said this; he had just been describing a case of plate glass that he had seen imported containing glass 10 by 14 feet in size weighing about 1040 pounds, the sides of which were ¾ inch thick; and he may have had that much larger and heavier case in mind when he said a case with ¾ inch sides would be a fair container. At any rate he does not say that a case with ½ inch sides and of the dimensions and weight of the cases involved in these proceedings, would not be a fair container.

Even Captain Fuller, a witness for the libellee, experienced in handling and stowing freight, is positive on the sufficiency of the cases if properly stowed. His testimony is to the effect that glass should always be stowed on end and that these cases were strong enough if they had been so stowed. He says glass is never stowed flat and that if stowed flat the protection was insufficient. He also says the cases were evidently laid on the flat, because if they had not been of course they would not have

been broken. This evidence is significant from the experience of this witness in handling and stowing freight. Another of the witnesses for the libellee, Louis Marks, speaking of the cases as they took them out of the ship, says, "As near as I can remember they were standing on edge; there may have been one or two lying down, but as near as I can remember they were most of them on edge." This testimony is consistent with the testimony of Captain Fuller and supports a strong probability that these three cases were stowed flat and therefore were exposed to breakage from being in that position. If they were stowed flat, such stowing was negligence by the carrier and fully accounts for the injuries received.

There is also the presumption in favor of shippers of large experience that they use the best methods of packing goods. "Shippers of merchandise of large experience, in absence of evidence to the contrary, are presumed to use the best method of packing the same to be carried over land or upon the sea." (Syllabus) *The Moravian,* 2 Hask., 157 : 17 Fed. Cas. (No. 9,789) 725, 726.

The libellee claims that because the cases were not marked "glass" it is therefore relieved from liability. The evidence shows that glass is generally marked "glass" on the outside of the package. One of the exceptions of the bill of lading recites that the carrier shall not be liable for any loss or damage arising from "obliteration, errors, insufficiency or absence of marks, numbers or description." Section 4281 R. S. U. S. provides that "if any shipper of * * * glass * * * contained in any parcel or package or trunk, shall lade the same as freight or baggage on any vessel, without at the time of such lading, giving to the master, clerk or owner of such vessel receiving the same a written notice of the true character and value thereof, and having the same entered on the bill of lading therefor, the master and owner of such vessel shall not be liable as carriers thereof in any form or manner." The bill of lading describes this shipment as "8 cases plate glass," which takes it out of the statute referred to. The question remains

whether the ship is relieved through the exception referred to in the bill of lading, and I find that it is not. In the first place there is no evidence that the damage arose from the absence of the mark "glass" on the cases. In the second place a special agreement limiting the liability of a carrier cannot be pleaded as an exemption from responsibility for loss resulting from gross negligence. As stated in the case of *Merriman v. The May Queen*, supra, 139, "The officers of the vessel knew perfectly well the contents of the boxes and a failure on their part to observe every precaution necessary to ensure their safe delivery, must be regarded as such gross negligence as subjects the vessel to the usual liability for the loss by breakage."

The testimony of libelant showing the damage to the glass in question to the extent of the destruction of its whole value, is not contested. The libelant claims damages in the amount of $389.08. This is made up, according to the evidence, of $346.80, invoice price of the goods, and $42.28 freight. The libellee contends that as it is agreed by the bill of lading that the value of each package does not exceed the sum of $100, on which basis the freight is adjusted, the libelant cannot now set a higher value thereon. This contention is correct. *Hart v. Pennsylvania R. R. Co.*, 112 U. S. 331.

A decree may be entered for the libelant for $342.28, with interest from January 14, 1905, the date of the demand made by the libelant on the libellee, estimated at $47.55, and costs.