## THE CUNARD STEAMSHIP CO., LTD., v. THOMPSON.

*Carriers—Negligence—Loss of baggage—Liability limited to contract or declared value.*

A contract ticket issued by a carrier to a passenger, which contains a clause limiting the liability of the carrier for loss of or injury to the passenger's baggage to fifty dollars, unless the passenger declares a larger sum and pays additional compensation at a specified rate on such excess valuation, is valid, and in case of loss of baggage through the negligence of the carrier the passenger is precluded from recovering more than fifty dollars unless there is an agreement between the parties to the effect that the lost baggage was of a greater value than that amount.

(Decided June 3, 1922.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Kelley & Cottrell,* for plaintiff in error.
*Messrs. Lamb, Vaughan & Lamb,* for defendant in error.

INGERSOLL, J. This was an action to recover damages for the loss of baggage, tried in the municipal court of the city of Cleveland, without a jury. At the trial of the case it was proved that the plaintiff, Louise C. Thompson, a buyer of millinery for Halle Brothers Company, purchased a second-class cabin contract ticket on May 29, 1920, at the office of the Collver-Miller Company, Cleveland, Ohio, which contract ticket called for second-class passage on the steamer "Imperator," sailing from New York to Southampton on June 19, 1920. The evidence further showed that upon plaintiff's

arrival in New York a day or so before the sailing of the steamer "Imperator," plaintiff checked at defendant's dock four pieces of hand baggage to be delivered to her stateroom. Upon going to her stateroom after the vessel sailed, one piece of baggage was found missing, namely, a suitcase. A search was made for the lost suitcase, but it was never found, and plaintiff thereupon brought suit against defendant for the damage caused her by the loss of this suitcase and its contents.

Plaintiff testified that there were in the suitcase articles of wearing apparel to the value of $528. On cross-examination, she averred that in the other three pieces of hand baggage, which were safely delivered to her stateroom, there were no articles of value—only old clothes which she had worn for several years and brought along only for emergency.

Defendant introduced in evidence the contract ticket which contained on the face thereof, among other provisions, a clause limiting the liability of the company for loss of or injury to the baggage of a passenger to the sum of fifty dollars ($50), unless the passenger declared a sum in excess of that amount and paid additional compensation at the rate of 1% on such excess and entered into a special contract signed by the parties.

The contract further provided that the price of passage was fixed partly with reference to the liability assumed by the company, as defined in the contract. The evidence showed that plaintiff had placed no excess value upon any of her baggage, and that there was no declaration of value in excess of fifty dollars, and that no special contract was entered into between her and the defendant.

The case was argued by plaintiff, principally, if not solely, upon the theory that such a contract was invalid under the law of Ohio, citing in proof of this the case of *United States Express Co.* v. *Backman,* 28 Ohio St., 144. This case, *Express Co.* v. *Backman,* does not apply to the facts of the principal case. There is no evidence to show any agreement between the plaintiff below and the steamship company that the sum of fifty dollars, which was the amount agreed on as the limitation of liability in the contract of carriage, was less than the value of the goods. It is a straight action for negligent loss of goods by the steamship company after it had almost *vi et armis* taken the suitcase from the shipper when she was insisting upon the right to retain the custody of the case and carry it to her room and keep it in her personal custody. The steamship company, in reply, stated that it was contrary to rule to allow her to retain custody; that the case would be taken by it and delivered to her at her room, which it failed to do, and failed ever to produce the case again, thus raising the indisputable presumption of loss thereof by negligence of the defendant; and, as we have said above, there was no evidence to the effect of any agreement between the parties that the value of the suitcase was greater than the amount of fifty dollars, the agreed limitation in the contract of carriage for liability for loss of the suitcase, and this last fact is what differentiates the *Backman case, supra,* from the case at bar.

The case must stand, then, upon the authorities cited by plaintiff in error, to-wit: *B. & O. Rd. Co.* v. *Hubbard,* 72 Ohio St., 302, and *P., C., C. & St.*

*L. Ry. Co.* v. *Sheppard,* 56 Ohio St, 68.  In the former case, at page 319, the court uses the following language:

"The value so agreed upon was not known to be unusually low, and below their real value.  The shippers, under this contract, if they made it, obtained a low rate of transportation for which they were willing to allow the carrier to place a money limit on its liability.  It is not a stipulation to exempt from liability for negligence, but a limit on the *amount* of liability for which the carrier should respond in case of loss or damage.  'This limitation as to value has no tendency to exempt from liability for negligence.  It does not induce want of care.  The carrier is bound to respond in that value for negligence.  The compensation for carriage is based on that value.  The shipper is estopped from saying that the value is greater.  The articles have no greater value for the purposes of the contract of transportation between the parties to that contract.  The carrier must respond for negligence up to that value.  It is just and reasonable that such a contract, fairly entered into and where there is no deceit practiced upon the shipper, should be upheld.  There is no violation of public policy.  On the contrary it would be unjust and unreasonable, and would be repugant to the soundest principles of fair dealing and of the freedom of contract, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.'  So said the Supreme Court of the United States in *Hart* v. *Railroad Co.,* 112 U. S., 340-341. The contract there considered is like the one here.

That case reviews and discusses the subject thoroughly, and cites the cases arrayed on each side of the controversy. It holds that the greater weight of authority and the better reasoned cases support the doctrine there announced. If the contract is induced by fraud or deception, or unfairly made and not understood by the shipper, a different rule will govern, as decided by the same cases."

This case is cited with approval in *Railroad Company* v. *Steinberg*, 94 Ohio St., 189, at page 206, where the court says:

"The authorities would seem to be uniform that where a shipper declares a less value than the true value of the property delivered for transportation, in order to obtain a low rate, recovery for loss or damages will be limited to the amount of the valuation named."

And in *Pennsylvania Co.* v. *Shearer*, 75 Ohio St., 249, at 251, the court points out the distinction between an attempt to contract for exemption from liability for negligence, and a contract limiting liability to a certain sum in consideration of the carriage at a reduced rate, saying:

"It has long been settled law in this state that a common carrier may, by special contract, limit his common law liability; but that for reasons of public policy a carrier cannot by contract exempt himself from liability for damages resulting from his own negligence. This statement of the law is not disputed in this case; for the question now before us is not whether a carrier may by contract relieve himself, in whole or in part, of a liability resulting from his want of due care, but rather whether a carrier may stipulate for a compliance

with a reasonable condition relating to his common law liability. The foundation of the rule that the carrier may not contract for exemption from liability for negligence is, that a contract for immunity from a liability which results from the carrier's neglect to perform a legal duty, would tend to encourage and protect negligence, to the great detriment of commerce and the public interests (*Davidson* v. *Graham et al.*, 2 Ohio St., 131, 137). If, therefore, the carrier and the shipper, without fraud, imposition or deception, enter into an agreement which does not come within the reason of the rule against exemption from liability for damage resulting from negligence, and is fair and reasonable in itself, it should be enforced as the parties have made it.

"It was upon this distinction that this court recently held that in consideration of a reduced rate of carriage a carrier might lawfully contract to be responsible for no more than the valuation agreed upon at the time of shipment (*B. & O. Railroad Co.* v. *Hubbard et al.*, 72 Ohio St., 302). In such a case the stipulation is not a stipulation for exemption as to the whole or any part of the damage which might occur; but is a liquidation of the damages by the parties, in consideration of the carriage at the reduced freight rate. The shipper has the option to pay the higher price of carriage and recover, in case of loss, the real value of the property carried. He chooses to pay the lower rate and accept the lower valuation. There is nothing unreasonable or contrary to public policy in such a special agreement."

A comparatively recent case in the Circuit Court, *Cohn-Goodman Co.* v. *Wells Fargo Express*

*Co.,* 22 O. C. D., 190; 13 C. C. (N. S.), 467, contains the following in the syllabus:

"When a shipper accepts a receipt from an express company for goods delivered to the carrier which contains a condition limiting the liability of the company to $50 unless another value is stated and fails to fix any value to the goods, he is thereby precluded from recovering more than $50 for the loss of the goods, where the charges for carrying are determined by the value of the goods, and the Interstate Commerce Act does not change this rule."

This is the rule of the supreme court of the United States, laid down in *Hart* v. *Pennsylvania Rd. Co.,* 112 U. S., 331, and later in *Adams Express Co.* v. *Croninger,* 226 U. S., 491, and a large number of other authorities, prominent among which is *Moore* v. *Duncan,* 237 Fed. Rep., 780, decided in the circuit court of appeals, which was a case in error from the district court of the United States, northern district of Ohio, the syllabus of which is as follows:

"1. A contract limiting the carrier's liability to an agreed valuation, in consideration of a lesser freight rate, is valid on the theory that by freely and deliberately electing to contract for carriage at a rate fixed on the agreed value the shipper is estopped to assert a higher value in case of loss or damage."

It seems to us from the foregoing authorities that although we admit there was a clear case of negligence on the part of the agents of the steamship company, which caused the loss of the suitcase, yet that the law limits the liability for such negligence clearly to the amount agreed upon be-

tween the parties. Unless the defendant in error can rely upon the *Backman case, supra,* there is nothing to take the present case out of the general rule as to the amount of damages to be recovered, which is the amount agreed upon between the parties, and having found that there is no evidence to show that there was an agreement between the parties to the effect that the property lost was of greater value than the sum agreed upon in the ticket sold to the plaintiff below, we find that the *Backman case* does not apply.

We feel, therefore, that the judgment of the court below was contrary to law in finding for the plaintiff in the amount of five hundred and thirty dollars, or in any amount greater than the amount of fifty dollars, which was the amount agreed upon as the limit of liability of the defendant, and that therefore the judgment of the court below should be reversed on the ground that it is contrary to law.

*Judgment reversed.*

PATTERSON, J. (of the Fifth Appellate District, sitting in place of VICKERY, P. J.), concurs.

SULLIVAN, J., dissenting. I respectfully dissent from the opinion of the court in this case for the reason that under the evidence contained in the record it appears that the defendant in error temporarily checked her four packages with the checking officer upon the dock, several hours before the regular departure of the ship of plaintiff in error, and, in the meantime, was attending to matters concerning her baggage and its shipment, and, thereupon, before the departure of the boat, re-

quested the return of one of her packages, to-wit, a package containing her valuables, and said request was refused.

It is clear from the record that because of the value of the package she desired to retain personal control and custody of the same, and that she did not desire to trust it with the plaintiff in error, who gave as a reason for the refusal that it was against the rules of the company.

There was no such rule in the contract between the plaintiff in error and the defendant in error, as stipulated in the terms printed upon the ticket or any other terms of actual contract between the plaintiff in error and the defendant company. It is clear that against her will, and without any alternative on her part, except to take ship without her valuable package, the plaintiff in error *vi et armis* deprived her of what appears to be her just right, and retained possession of the valuable package under circumstances and conditions to which she was not a party, but, on the contrary, an unwilling and protesting party, by reason whereof, and because of the insistence of plaintiff in error to retain such valuable package, under the circumstances aforesaid, the same was lost, as a result of which the defendant in error was damaged in the amount found by the jury, to-wit, $528.

If we confine ourselves to the record in the case at bar it is evident that it is distinguished from the cases cited in the briefs, for in those cases there was no issue as to whether the terms of the contract were mutually agreed upon. If it is claimed that the proof was in variance with the allegations of the petition, it was the duty of the court *sua sponte* to order the petition amended to

conform to the proof, for the reason that the defendant in error was entitled to have her case tried and decided upon the actual proof in the case even though it might be at technical variance with the allegations of the petition.

For these reasons I dissent from the majority opinion rendered in this case.